UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RANDY MAURICE BRIDGES,

Petitioner,

v.

ISIDRO BACA, *et al.*,

Respondents.

Case No. 3:15-cv-00121-MMD-VPC

ORDER

## I. INTRODUCTION

In this habeas corpus action, brought by Nevada prisoner Randy Maurice Bridges, the respondents have filed a motion to dismiss. (Dkt. no. 10.) The Court will grant that motion, and dismiss this action, on the ground that Bridges' claims are barred by the procedural default doctrine.

## II. BACKGROUND

On September 2, 1988, Bridges was charged with sexual assault, first degree kidnapping, unlawful giving away of a controlled substance, and possession of a controlled substance. *See* Information, Exh. 1.[1] The charges related to events that occurred on August 6, 1988, which, the jury apparently found, involved Bridges kidnapping and sexually assaulting a 15-year-old girl who was in Reno from California visiting relatives.[2]

---

[1]The exhibits referred to by number in this order were filed by respondents and are found in the record at dkt. no. 11.

[2]Bridges' statement of the background facts in his briefing on his direct appeal, as gleaned from the victim's testimony at Bridges' preliminary hearing, is found at pages 6-9 of Bridges' opening brief on appeal, Exh. 10.

At the conclusion of a jury trial, on March 15, 1989, the jury found Bridges guilty of sexual assault, second degree kidnapping, unlawful giving away of a controlled substance, and possession of a controlled substance. *See* Verdicts, Exh. 2.

Bridges, who was released on bond pending sentencing, failed to appear for his sentencing on May 3, 1989, and, on May 12, 1989, a bench warrant was issued for his arrest. *See* Bench Warrant, Exh. 3. With respect to his failure to appear for his sentencing, Bridges stated the following in his supplemental state habeas petition:

> Mr. Bridges left the jurisdiction and went to St. Martin, an island in the Caribbean, prior to the sentencing for a number of years. The reason Mr. Bridges left the jurisdiction was that he believed that his counsel had done very little to get him a fair trial and that he was not guilty of the charges. Mr. Bridges believed he had been "railroaded."

Supplemental Petition for Writ of Habeas Corpus, Exh. 14 at 6, ¶ 20. Bridges returned to the United States and was apprehended in 2010. *See id*. at 5-6, ¶¶ 19-21.

Bridges' sentencing was then finally held on July 30, 2010. *See* Minutes, Exh. 7. Bridges was sentenced as follows:

| | | |
|---|---|---|
| Count I | sexual assault | life in prison, with the possibility of parole after 5 years |
| Count II | kidnapping | 15 years in prison, concurrent with the sentence on Count I |
| Count III | unlawful giving away of controlled substance | 20 years in prison, concurrent with the sentence on Count II |
| Count IV | possession of controlled substance | 6 years in prison, concurrent with the sentence on Count III |

*Id.* Judgment was entered on August 2, 2010. *See* Judgment of Conviction, Exh. 8.

Bridges appealed. *See* Notice of Appeal, Exh. 9; Appellant's Opening Brief, Exh. 10. The Nevada Supreme Court affirmed on July 14, 2011. *See* Order of Affirmance, Exh. 11.

On May 9, 2012, Bridges filed, in the state district court, a *pro se* post-conviction petition for writ of habeas corpus. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 12. On May 11, 2012, the state district court appointed counsel to represent Bridges. *See* Order Granting Motion for Appointment of Counsel, Exh. 13. On

November 6, 2012, with counsel, Bridges filed a supplemental petition. *See* Supplemental Petition for Writ of Habeas Corpus, Exh. 14. The State filed a motion to dismiss, and on July 19, 2013, the court held an evidentiary hearing regarding procedural defenses asserted by the State. *See* Motion to Dismiss, Exh. 15; Order filed March 11, 2013, Exh. 16; Minutes, Exh. 17; Transcript of Proceedings, July 19, 2013, Exh. 18. On August 1, 2013, the state district court dismissed Bridges' petition as barred under the fugitive disentitlement doctrine, and, alternatively, ruled that Bridges' claims lacked merit. *See* Order entered August 1, 2013, Exh. 19. Bridges appealed. *See* Notice of Appeal, Exh. 20; Appellant's Opening Brief, Exh. 22. The Nevada Supreme Court affirmed on October 15, 2014, ruling that the district court erred in reaching the merits of certain of Bridges' claims, but also ruling that the district court properly dismissed the case pursuant to the fugitive disentitlement doctrine. *See* Order of Affirmance, Exh. 23.

While the appeal from the dismissal of Bridges' state habeas petition was pending, Bridges filed a *pro se* petition for writ of mandamus in the Nevada Supreme Court; the Nevada Supreme Court denied that petition on November 14, 2013. *See* Order Denying Petition, Exh. 21.

This Court received Bridges' *pro se* federal habeas corpus petition, initiating this case, on February 26, 2015. *See* Petition for Writ of Habeas Corpus. (Dkt. no. 6.)

Respondents filed their motion to dismiss on August 27, 2015 (dkt. no. 10), asserting: that all the claims in Bridges’ petition are procedurally defaulted as a result of the state courts' application of the fugitive disentitlement doctrine; that all the claims in Bridges' petition are barred by the federal fugitive disentitlement doctrine; and that all the claims in Bridges' petition are barred by the federal laches doctrine. *See* Motion to Dismiss (dkt. no. 10 at 6-13). Bridges filed an opposition to the motion to dismiss on September 30, 2015. (Dkt. no. 14.) Respondents filed a reply in support of the motion to dismiss on October 20, 2015. (Dkt. no. 15.)

///

///

## III. DISCUSSION

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state ground doctrine. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

In their motion to dismiss, respondents assert that all Bridges' claims are procedurally defaulted, as a result of the state courts' application of the fugitive disentitlement doctrine.

The claims that Bridges asserts in his habeas petition in this case are the same claims that he asserted in his supplemental habeas petition in state court. *Compare*

Petition for Writ of Habeas Corpus (dkt. no. 6) *with* Supplemental Petition for Writ of Habeas Corpus, Exh. 14. The state district court dismissed Bridges' petition as barred under the fugitive disentitlement doctrine, and, alternatively, ruled that Bridges' claims lacked merit. *See* Order entered August 1, 2013, Exh. 19. On appeal, the Nevada Supreme Court affirmed the dismissal of the case pursuant to the fugitive disentitlement doctrine. *See* Order of Affirmance, Exh. 23.

A state procedural bar is independent unless it appears "to rest primarily on federal law or appears to be interwoven with federal law." *Coleman*, 501 U.S. at 734; *see also Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). The Nevada Supreme Court affirmed the dismissal of Bridges' claims solely on the ground of the state-law fugitive disentitlement doctrine. That ruling was independent of the merits of Bridges' federal constitutional claims.

A state procedural rule is "adequate" if it is "clear, consistently applied, and well established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (State procedural rule adequate if "firmly established and regularly followed by the time as of which it is to be applied." (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir.2001).

In *Bennett v. Mueller*, 322 F.3d 573, 585 86 (9th Cir. 2003), the court of appeals announced a burden shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id*. at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id*. If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the procedural rule rests with the State, which must demonstrate "that the state procedural

rule has been regularly and consistently applied in habeas actions." *Id*.; *see also King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

In this case, the respondents meet their initial burden under *Bennett* by asserting that the Nevada Supreme Court's application of the fugitive disentitlement doctrine constituted an independent and adequate state procedural ground for denying relief. *See* Motion to Dismiss at 6-9. In response, Bridges argues that the fugitive disentitlement doctrine was not clear, consistently applied, and well established when he left the jurisdiction in May 1989. *See* Opposition to Motion to Dismiss (dkt. no. 14 at 3-4). In their reply, respondents review the Nevada case law establishing the doctrine. *See* Reply (dkt. no. 15).

The Nevada Supreme Court's ruling, with respect to the fugitive disentitlement doctrine, was as follows:

> The fugitive disentitlement doctrine allows the dismissal of an appeal if a defendant flees the jurisdiction before or after sentencing but before the time for filing a direct appeal has passed if the fleeing somehow affects the ability of the court to hear the appeal. *Ortega-Rodriquez v. United States*, 507 U.S. 234, 249 (1993); *Bellows v. State*, 110 Nev. 289, 292, 871 P.2d 340, 342 (1994). While the instant case does not involve a direct appeal, the fugitive disentitlement doctrine still applies to those claims that challenge the validity of the verdict. [Footnote omitted.] In *Bellows*, this court held that missing transcripts affected the ability of the court to hear the appeal and dismissed the appeal. The instant case is almost identical to *Bellows*. There are no transcripts. "When an escape results in the loss of a trial transcript, '[no] persuasive reason exists why [the court] should proceed to adjudicate the merits of a criminal case after the convicted defendant . . . escapes from the restraints placed upon him pursuant to the conviction.'" *Id*. at 293, 871 P.2d at 343 (citing *Molinaro v. United States*, 396 U.S. 365 (1970)).
>
> We note that appellant was convicted 25 years ago. There was testimony presented at the limited evidentiary hearing that one of the detectives passed away, the doctor who examined the victim is retired and elderly, and the victim lives out of state and does not want to participate in a new trial. Further, with the passage of time comes faded memories and lost evidence. It is clear that the lack of transcripts was the fault of appellant and appellant failed to even attempt to reproduce a transcript, only claiming that it might be possible. We note that appellant acknowledged that the procedure in *Bellows* for obtaining a new trial based on lost transcripts was the correct course of action to take in this case, however, appellant has still failed to file the requisite motion for new trial or follow the procedures set forth in *Bellows*. 110 Nev. At 292, 871 P.2d at 342. Therefore, we conclude that the district court did not err in dismissing the petition. . . .

Order of Affirmance, Exh. 23, pp. 2-3.

In *Wood v. Hall*, 130 F.3d 373 (9th Cir.1997), the Ninth Circuit Court of Appeals ruled that Oregon's fugitive disentitlement doctrine was adequate to support a procedural default; the decision is instructive:

> Wood contends that the Oregon Court of Appeals's refusal to hear his claim did not constitute an adequate state procedural bar because Oregon's fugitive disentitlement doctrine is discretionary. Wood's argument is essentially that because the Oregon courts may dismiss cases in which appellants have absconded, but are not bound to do so, the Oregon state rule is not “strictly or regularly” applied. Under Wood's view, any state doctrine that involves discretion on the part of the state court system may never be an independent and adequate state ground of decision.
>
> We have held, however, that the fact that “the application of a rule requires the exercise of judicial discretion does not render the rule inadequate to support a state decision.” *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir.1996); *cert. denied*, 519 U.S. 1001, 117 S.Ct. 500, 136 L.Ed.2d 391 (1996). In arguing that a discretionary doctrine may never be an adequate procedural bar, Wood equates discretion with inconsistency. We have expressly rejected this characterization, holding that judicial discretion may be applied consistently when it entails “the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.” *Id*.
>
> As a waiver of a litigant's right to appeal, the fugitive disentitlement doctrine is distinct from most state rules that have been found to be too inconsistently or arbitrarily applied to bar federal habeas review. These cases concern state rules that generally fall into two categories: (1) rules that have been selectively applied to bar the claims of certain litigants, *see*, *e.g.*, *Sullivan v. Little Hunting Park*, 396 U.S. 229, 233-34, 90 S.Ct. 400, 402-03, 24 L.Ed.2d 386 (1969) (rule requiring notice to opposing counsel that a transcript would be tendered used to bar the claims of an African-American family to use community facilities in Virginia); *Williams v. Georgia*, 349 U.S. 375, 382-89, 75 S.Ct. 814, 819-23, 99 L.Ed. 1161 (1955) (Georgia court's discretionary decision to deny motion for new trial to African-American defendant not adequate where the court had granted a new trial on many previous occasions); [*Wells v. Maass*, 28 F.3d 1005, 1008-11 (9th Cir.1994)] (“occasional practice” of declining to consider claims not raised in the petition for discretionary review insufficient to create an adequate procedural default); and (2) rules that are so unsettled due to ambiguous or changing state authority that applying them to bar a litigant's claims is unfair. *See*, *e.g.*, *Harmon v. Ryan*, 959 F.2d 1457, 1463 (9th Cir.1992) (“state procedures for seeking discretionary review were in practice sufficiently ill-defined” that noncompliance could not bar federal habeas relief); *Calderon v. United States Dist. Court*, 96 F.3d 1126, 1130-31 (9th Cir.1996) (California's timeliness standards were applied with so much variation that no discernible clear rule existed), *cert. denied*, 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997). Wood fails to show that Oregon has applied its rule selectively or that the doctrine is ambiguous or unsettled in the state.

* * *

> . . . [Wood] has not presented sufficient evidence that Oregon's application of its fugitive disentitlement doctrine is unprincipled, arbitrary, or standardless. That a rule is discretionary does not alone prevent it from being applied consistently to individuals who are similarly situated. *See Morales*, 85 F.3d at 1392. Nor does the fact that a violation of a rule may infrequently be excused render the rule inadequate to support the state decision, so long as the state follows clear standards in excusing defaults. *See Amos v. Scott*, 61 F.3d 333, 342 (5th Cir.) ("[W]e do not regard an occasional act of grace by the Texas court in entertaining the merits of a claim that might have been viewed as waived by procedural default to constitute such a failure to strictly or regularly follow the state's . . . rule as permits us to disregard that rule generally or where the state court has not done so.") (internal quotations omitted)), *cert. denied*, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995). Wood has not demonstrated that Oregon has treated similarly situated litigants differently nor has he shown that Oregon applies its rule so infrequently that he was legitimately confused about the effect his departure from the state would have on his right to present an appeal in the state system.
>
> We conclude that Oregon's fugitive disentitlement rule was clear, consistently applied, and well-established at the time Wood fled from the state. Thus, it constitutes an independent and adequate state ground sufficient to support a finding of procedural default.

*Wood*, 130 F.3d at 376-78 (footnote omitted).

Also instructive is the United States Supreme Court's decision in *Beard v. Kindler*, 558 U.S. 53 (2009). In *Beard*, the Supreme Court held Pennsylvania's "fugitive forfeiture rule" to be adequate to support a procedural default defense:

> We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review. Nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine. To the contrary, a discretionary rule can be "firmly established" and "regularly followed" — even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others. *See* Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L.Rev. 1128, 1140 (1986) ("[R]efusals to exercise discretion do not form an important independent category under the inadequate state ground doctrine").

*Beard*, 558 U.S. at 60-61.

*Bellows v. State*, 871 P.2d 340 (Nev. 1994), the case relied upon by the Nevada Supreme Court in ruling on the appeal in Bridges' state habeas action, was much like this case; in *Bellows*, a convicted defendant absconded while on bail pending his

///

sentencing, and the trial transcripts and court reporter's notes were destroyed during the eight years he was a fugitive. In *Bellows*, the Nevada Supreme Court held:

> A new trial is not appropriate under the circumstances of this case. In *Arvey v. State*, 94 Nev. 566, 583 P.2d 1086 (1978), we addressed an almost identical situation as this case and concluded that the appellant could not pursue an appeal following an escape. In that case, a convicted defendant absconded while on bail pending appeal. *Id*. at 567, 583 P.2d at 1087. The state then moved to dismiss the appeal. This court reasoned that "[a]n appellate court is vested with broad discretion in its disposition of appeals by escaped convicted felons." *Id*. This court then granted the state's motion to dismiss and ordered the appellant's bail forfeited.
>
> *Arvey* can be distinguished from this case because appellant escaped prior to sentencing and before this court had jurisdiction over his appeal. Nevertheless, several state and federal courts have ruled that appellants abandon their right to appeal when they escape regardless of whether the escape occurred before or after perfecting an appeal. *See, e.g.*, *Subel v. State*, 567 So.2d 404 (Ala.Crim.App.1990); *State v. Gurican*, 576 So.2d 709, 712 (Fla.1991). Sound policies support these decisions.
>
> Allowing an appeal after an escape "flouts the judicial process" and encourages other prisoners to escape. *United States v. Persico*, 853 F.2d 134, 137 (2nd Cir.1988); *see also United States v. Holmes*, 680 F.2d 1372, 1374 (11th Cir.1982), *cert. denied*, 460 U.S. 1015, 103 S.Ct. 1259, 75 L.Ed.2d 486 (1983); *State v. Gurican*, 576 So.2d 709, 712 (Fla.1991). In addition, the delay in prosecuting an appeal caused by an escape may result in lost or destroyed records such as in this case. Delays caused by an escape further increase the difficulty of conducting a new trial because evidence may become lost or stale and memories fade.
>
> The United States Supreme Court has recently ruled in a case involving federal criminal procedure that escaping prior to sentencing and before appeal does not necessarily result in dismissal of an appeal. The court ruled that dismissal is appropriate when the escape renders a meaningful appeal impossible or "disrupt[s] the appellate process so that an appellate sanction is reasonably imposed." *Ortega-Rodriguez v. United States*, [507 U.S. 234, 249-50], 113 S.Ct. 1199, 1208-09, 122 L.Ed.2d 581 (1993). We agree that not every case involving a convicted defendant who escapes prior to sentencing and appeal requires dismissal. Instead, dismissal is appropriate in those cases in which the escaped defendant's conduct significantly interferes with the operation of the appellate process. *Id*. at [249-50], 113 S.Ct. at 1209.
>
> When an escape results in the loss of a trial transcript, a substantial interference with the appellate process results. We thus adopt the reasoning in *State v. Moore*, 87 N.M. 412, 534 P.2d 1124 (N.M.App.1975), which we cited with approval in *Lopez v. State*, 105 Nev. 68, 74, 769 P.2d 1276, 1280 (1989). The New Mexico Court of Appeals suggested that the following three factors be considered when determining whether to grant a new trial after a trial transcript has been lost or destroyed: (1) whether the appellant has complied with the procedures for perfecting an appeal; (2) whether the transcript can be reconstructed; and (3) whether the

> appellant's conduct has led to the inability to obtain the transcript. *Id*. at 1125.
>
> Because appellant's absence led to the loss of his trial transcripts, he may not benefit from his attempt to elude the law. Allowing appellant to avoid any negative repercussions from his escape "operates as an affront to the dignity of [this] court's proceedings." *Ortega-Rodriguez*, [507 U.S. at 246], 113 S.Ct. at 1207. When an escape results in the loss of a trial transcript, "[n]o persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant ... escapes from the restraints placed upon him pursuant to the conviction." *Molinaro v. United States*, 396 U.S. 365, 366, 90 S.Ct. 498, 500, 24 L.Ed.2d 586 (1970). Accordingly, we dismiss this appeal. *See Arvey v. State*, 94 Nev. 566, 567, 583 P.2d 1086, 1087 (1978).

*Bellows*, 871 P.2d at 342-43.

In *Arvey*, the case relied upon by the Nevada Supreme Court in *Bellows*, a convicted defendant was granted bail pending his appeal, and then absconded during the appeal. *See Arvey*, 583 P.2d at 1087. The Nevada Supreme Court dismissed the appeal, ruling as follows:

> An appellate court is vested with broad discretion in its disposition of appeals by escaped convicted felons. *See*, *for example*, *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), and cases cited therein. In *Molinaro* a convicted felon had escaped pending an appeal and bail had already been revoked. There, the High Court summarily dismissed saying: "No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction." *Id*. at 366, 90 S.Ct. at 498.
>
> The language in *Molinaro* is appropriate here, where, in our view, the facts and circumstances warrant the exercise of our discretion to unconditionally dismiss the appeal and forfeit the $100,000 bail.

*Id*.

This court determines that, in light of *Arvey*, the fugitive disentitlement doctrine was sufficiently well established, clear, and consistently applied in Nevada, long before Bridges failed to appear at his sentencing. That doctrine is, therefore, adequate to support application of the procedural default doctrine in this case. Bridges has not met his burden, under *Bennett*, of showing otherwise.

Moreover, the court determines that Bridges' default — his escape from the jurisdiction, and his failure to appear at his sentencing — was a continuing act, from

1989 until 2010, when he was arrested. *See Campbell v. Griffin*, 710 P.2d 70, 72-73 (Nev. 1985) ("Escape is a continuing offense that is recommitted each day an escaped inmate is not in a custodian's lawful custody."); *see also Woolsey v. State*, 906 P.2d 723, 726 (Nev. 1995) ("Admission to bail does not end . . . custody, but only changes its conditions, and the accused person, by failing to appear, violates those conditions and unlawfully eludes custody. Escape 'is recommitted each day an escaped inmate is not in a custodian's lawful custody.' *Campbell*, at 722. Similarly, failure to appear is recommitted as long as the offender has not returned to lawful custody." (quoting, with approval, state district court's order)). Bridges' default was not complete in May 1989 when he absconded to St. Martin; rather, his default continued until 2010, when he was finally arrested. Certainly, by 2010, the fugitive disentitlement doctrine, under Nevada law, was clear, consistently applied, and well established, such as to be adequate to support the respondents' procedural default defense in this case.

Bridges makes no argument that he can show cause and prejudice to overcome his procedural default, and he makes no argument that he can prove actual innocence such as to overcome the procedural default.

The Court will, therefore, grant respondents' motion to dismiss on procedural default grounds.

As the Court finds this case subject to dismissal on procedural default grounds, the Court need not, and declines to, reach respondents' other arguments: that all the claims in Bridges' petition are barred by the federal fugitive disentitlement doctrine, and that all the claims in Bridges' petition are barred by the federal laches doctrine. *See* Motion to Dismiss at 6-13.

The standard for issuance of a certificate of appealability is governed by 28 U.S.C. § 2253(c). The Supreme Court has interpreted section 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district

> court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir.2000). Applying this standard, the Court finds that a certificate of appealability is not warranted in this case.

## IV. CONCLUSION

It is therefore ordered that respondents' Motion to Dismiss (dkt. no. 10) is granted. This action is dismissed.

It is further ordered that petitioner is denied a certificate of appealability.

It is further ordered that the Clerk of the Court enter judgment accordingly.

DATED THIS 7th day of December 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE